Oscar T. KUNKEL et ux., Appellants,

v.

POE LAND & DEVELOPMENT COMPANY, Inc., and William L. Nolen et ux., Appellees.

No. 83.

Court of Civil Appeals of Texas.

Corpus Christi.

July 29, 1965.

Kelley, Looney, McLean & Littleton, Jackson Littleton, Edinburg, for appellants.

Morris Bogdanow, Houston, for appellees.

SHARPE, Justice.

This is an appeal from a judgment in favor of Poe Land and Development Company, Inc., appellee, plaintiff below, hereafter sometimes called Poe, against Oscar T. Kunkel and his wife, Mary Kunkel, appellants, defendants below, hereafter sometimes called Kunkel. The judgment, in substance, awarded Poe rescission of a contract for the exchange of properties entered into in November, 1961; vested title in Poe to the Holiday Lodge Motor Courts in Rockport, Aransas County, Texas; ordered cancellation of certain notes and liens held by Kunkel, received by him in part payment of a dairy farm located in Cameron County, Texas, which he had exchanged for the Aransas County Property; ordered cancellation of a note and lien held by E. L. Mayberry, a defendant in the trial court who has not appealed; and awarded Poe a recovery of $1,600.00 against Kunkel for net profits realized by him from the operation of said Holiday Lodge Motor Courts between November 4, 1961 and January 16, 1963, the date of judgment.

Kunkel asserts ten points of error on this appeal, in substance, as follows: (1) Failure to grant a continuance, (2) error in submitting Special Issue One, (3) error in admitting incompetent hearsay evidence in connection with Special Issue One, (4) error in entering judgment based upon the answer to Special Issue One, (5) refusal to submit appellants' requested special issues in connection with the cause of a foreclosure by the first lien holder on the Cameron County property, formerly owned by Kunkel, (6) error in the submission of Special Issue Two, particularly, since in inquiring about a "failure of consideration" it submitted a legal rather than a fact issue for determination of the jury, (7) error in submitting Special Issue Four, (8) error in entering judgment based upon findings, which, in effect, established that E. L. Mayberry was an agent for Poe and also represented Kunkel, (9) error in entering judgment in the absence of a necessary party, i. e., Sinton Building and Loan Association,

which held an indebtedness and lien on the Aransas County property, and (10) error in entering judgment some ten months and several terms of court after the jury verdict.

The material facts will be briefly stated. On October 23, 1961, Poe and Kunkel entered into a written contract whereby Kunkel agreed to convey to Poe a farm located in Cameron County, Texas, consisting of some 617 acres of land together with a herd of dairy cattle and certain equipment and buildings for an agreed price of $346,-000.00, payable by Poe's assumption of a first lien indebtedness of approximately $167,000.00 held by Mr. Charles Gray and the execution of a second lien note in the amount of $80,000.00 to Kunkel; and whereby Poe agreed to convey to Kunkel the Holiday Lodge Motor Courts in Rockport, Texas, at an agreed price of $135,-000.00, on which there was an indebtedness and lien in the amount of $35,000.00 placed against the said property by Kunkel as a part of the transaction. The original exchange agreement provided that Poe would pay the monthly installment of $1304.80 due to Gray on November 1, 1961. However, prior to said date, Mr. P. O. Eiller, representing Poe, and Kunkel had an oral understanding that Kunkel would make such payment and that Poe would pay certain taxes of approximately the same amount owed by Kunkel on the Cameron County property to which Poe acquired title. The transaction was closed at Rockport, Texas, on November 3, 1961, at which time Lewis Bogdanow, President of Poe, Mr. Cabiness, attorney and representative of an abstract or title company, Mr. E. L. Mayberry, a real estate broker, and other persons involved in the over-all exchange of properties, the details of which are not necessary to decision of this case, were present. Kunkel did not attend the meeting at which the transaction was closed, but the jury found, in answer to Special Issue 4 that Kunkel was represented by Mayberry on such occasion, and, also, in answer to Special Issue 9, that Mayberry was the agent of Poe on November 3, 1961. The jury

further found, in answer to Special Issue 5, that Mayberry represented that the November 1, 1961 payment to Gray, the first lien-holder, had been made by Kunkel and, in answer to Special Issue 6, that Poe would not have consummated and closed the transaction but for such representation by Mayberry.

The basic facts concerning the payment of November 1, 1961, are as follows: Pursuant to Kunkel's instructions, his farm manager mailed a check to Gray in the amount of $1304.80 to cover the said installment. The check was returned by the Los Fresnos State Bank, Los Fresnos, Texas, when it was presented for payment on November 7, 1961, on account of insufficient funds. The check was good on October 31, 1961, its date of issue, until November 14, 1961, except on November 6th and 7th. Kunkel's explanation of why the check to Gray was not good on such dates was that his farm manager had to write checks for the payroll and expenses in the operation of the dairy farm, acquired by Poe on November 3, 1961, which should have been paid by Poe, resulting in the reduction of the bank balance to approximately $200.00 below the amount of the check to Gray. Kunkel testified that he was not aware of the fact that check had been returned unpaid until he was contacted by an attorney for Gray on or about November 11, 1961, who advised that Gray was going to foreclose his lien on said property unless the balance due thereon was paid in full. The foreclosure sale was held on the first Tuesday in January, 1962, when Gray bid in the property. Thereafter, Gray recovered a deficiency judgment against Kunkel in the amount of approximately $40,000.00. Kunkel testified that prior to November 11, 1961, Mr. Eiller, who had taken charge of the Cameron County Dairy Farm on November 3, 1961, had sold a number of the cattle covered by Gray's mortgage, in apparent violation thereof. On the trial of the case Kunkel requested two special issues inquiring, in substance, whether the sale of cattle by Poe was a cause of the subsequent foreclo-

sure of the deed of trust on the Cameron County farm, which were refused by the court.

Poe's second amended original petition contained the following allegation: "That thereafter said property was foreclosed under said mortgage by said Charles Gray; that said insufficient check caused and made possible said foreclosure proceedings which constituted failure of consideration and said representation that said payment had been made was in fact false, and were valid grounds for rescission of said transaction."

Special issues 1 and 2, submitted to the jury and the answers thereto are as follows:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the failure, if any, to make the payment due November 1, 1961, on the Charles Gray note caused and brought about the foreclosure of the mortgage held by Charles Gray?

Answer 'Yes' or 'No'.

We, the jury, answer: Yes.

If you have answered Special Issue No. 1 'Yes', then you will answer the following Special Issue, otherwise you need not do so.

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that causing the foreclosure of the mortgage by Charles L. Gray by Defendant Kunkel, if you have so found, constituted failure of consideration for the deed to the property described in Plaintiffs' Second Amended Petition and known as the Holiday Lodge Motor Courts?

Answer 'Yes' or 'No'.

We, the jury, answer: Yes."

No definition or explanatory instruction was given in connection with either issues 1 and 2.

Disposition of this appeal will be expedited by first considering Appellants' point six, reading as follows:

"The District Court erred in its submission of Special Issue Number Two for the reasons (each of which is separately assigned as error) that:

(a). The said issue has no adequate predicate that Appellant Kunkel caused the foreclosure, said Kunkel not having been named in the first issue:

(b). The said issue assumes facts on which it was based which were not conclusively established; and

(c). The said issue constitutes a legal rather than a factual inquiry in asking whether there was a 'failure of consideration' without there being given any instructions or definitions as to that term as applicable to the case as bar."

We sustain appellant's point six and the contentions made thereunder. The trial court should have sustained the objections made by counsel for Kunkel to said Special Issue No. 2, the substance of which are contained in appellants' point six. Said issue clearly submitted a legal issue rather than a factual issue for the determination of the jury and was therefore improper. Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358, 360 (1944); Schoenberg v. Forrest, 228 S.W.2d 556, 563 (Tex.Civ.App., 1950, wr. ref. n. r. e.); Advance Aluminum Castings Corp. v. Schulkins, 267 S.W.2d 174, 181 (Tex.Civ.App., 1954, n. w. h.); Minneapolis-Moline Company v. Purser, 361 S.W.2d 239, 245 (Tex.Civ.App., 1962, n. w. h.); Foerster v. Peoples, 362 S.W.2d 918 (Tex.Civ.App., 1962, n. w. h.). In the last-cited case the court said:

"Rule 279, Texas Rules of Civil Procedure, requires the trial court to submit controlling issues which are supported by the pleadings and the evidence. It is well settled that only issues of fact are to be submitted to the

jury. As framed, special issue number one called on the jury to determine the effect of appellant's actions upon the oral contract between the parties. This is clearly a question of law and as such is an improper submission. Knutson v. Ripson, Tex.Civ.App., 346 S.W.2d 424, affirmed 354 S.W.2d 575; Advance Aluminum Castings, Corp. v. Schulkins, Tex.Civ.App., 267 S.W.2d 174, NRH; Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358. Appellant's first point of error is sustained. As this error requires a reversal of the case, it is not deemed necessary to discuss the other points of error."

It was the duty of the court (not the jury) to determine whether there was a failure of consideration in this case based upon ultimate facts found by the jury or conclusively established. Special Issue No. 1 did not refer to either party and did not inquire as to which one of them the failure to make the payment of November 1, 1961 should be attributed; and, therefore, it did not furnish a predicate for the assumption in Special Issue No. 2 that Kunkel caused the foreclosure of Gray's mortgage. The last-mentioned issue assumed such fact without it having been found by the jury in answer to Special Issue No. 1, or having been established conclusively. Under such conditions the answer of the jury to Special Issue No. 2 cannot be given any effect.

On oral argument of this case counsel for Poe conceded that Special Issue No. 2 improperly submitted a legal issue to the jury, but then took the alternative position that even when the answer to it is disregarded, still, the judgment should be affirmed on the basis that failure of consideration was established as a matter of law. In response to the request of the court, all parties filed supplemental briefs on such contention, which had not theretofore been briefed. After analysis of such additional argument and authorities, we are of the opinion that in the state of the record we cannot determine that failure of consideration was established as a matter of law,

and it appears that issues of fact existed as to the cause of the said foreclosure which were not resolved on the trial of this case. There is no proper finding of fact presented by the present record which establishes responsibility for said foreclosure. The judgment cannot correctly rest upon the determination by a jury of the legal issue concerning failure of consideration. For the reasons given, appellants' point six is sustained.

Reversible error is also presented by appellants' points seven and eight which involve consideration of special issues 4, 5, 6 and 9, reading as follows:

*"SPECIAL ISSUE NO. 4*

Do you find from a preponderance of the evidence that at the time of the closing of the transaction in question in Rockport, Texas, on November 3, 1961, Defendant Kunkel was represented by E. L. Mayberry?

Answer 'Yes' or 'No'.

We, the Jury, answer: Yes.

\*     \*     \*     \*     \*     \*

*SPECIAL ISSUE NO. 5*

Do you find from a preponderance of the evidence that at the time of the closing of this transaction in Rockport, Texas, E. L. Maberry represented that the November 1, 1961 payment of Thirteen Hundred and Four and 80/100 Dollars ($1304.80) to Charles Gray had been made by Defendant Kunkel?

Answer 'Yes' or 'No'.

We, the Jury, answer: Yes.

\*     \*     \*     \*     \*     \*

*SPECIAL ISSUE NO. 6*

Do you find from a preponderance of the evidence that but for such representation by E. L. Maberry, if you have so found, Plaintiffs would not have consummated and closed the transaction, executing the deed to Defendant Kunkel to the Holiday Lodge

Motor Courts and the note and deed of trust to Defendant Kunkel.

Answer 'Yes' or 'No'.

We, the jury, answer: Yes.

\*    \*    \*    \*    \*    \*

### SPECIAL ISSUE NO. 9

Do you find by a preponderance of the evidence that on November 3, 1961, E. L. Maberry was an agent of Poe Land and Development Company.

Answer 'Yes' or 'No'.

We, the jury, answer: Yes."

The result of the jury's findings on special issues 4 and 9 is that Mayberry (incorrectly spelled *Maberry* in some instances) "represented" Kunkel and "was an agent of Poe Land and Development Company" on the date of closing the transaction here involved on November 3, 1961.

Appellants objected to the submission of Special Issue 4 on the grounds that it was vague and indefinite in asking whether Kunkel was represented by Mayberry; that the word "represented" was not defined; and that the issue was not supported by the evidence. Such objections should have been sustained by the trial court. The issue, as submitted, was vague and indefinite and insufficient to constitute a submission of agency. Also, the evidence was factually insufficient to raise and support an issue that Mayberry was the agent for Kunkel in connection with the closing of the transaction. Special Issue 5 was conditionally submitted on an affirmative answer to issue 4, and Special Issue 6 was conditionally submitted on an affirmative answer to issue 5. Appellants objected to issues 5 and 6, among other reasons, because each of them was immaterial to any issue before the court. Under the conditions stated, such objections

were good. In the situation here presented the findings on Special Issues 4, 5 and 6 cannot lend support to a judgment in favor of appellee. This is true not only for the reasons just given but also because the jury found in answer to Special Issue 9 that Mayberry was the agent of appellee on the date the transaction was closed, which would bring the case within the well-settled rule that a party may not recover from another on the basis of a misrepresentation made to him by his own agent. Appellants' points seven and eight are sustained.

Since the case must be reversed and remanded for new trial, because of our action in sustaining appellants' points six, seven and eight, extended discussion of their remaining points is unnecessary. Appellants' point one (concerning the failure of the trial court to grant a continuance) and their point ten (relating to the delay in entry of the judgment) are overruled. Appellants' contentions under their points two and four (concerning the manner in which Special Issue 1 was submitted) have been considered in connection with our discussion of appellants' point six. The matters complained of under appellants' point three (concerning the admission of alleged hearsay testimony) become immaterial in view of our disposition of the case. The contentions made under appellants' point five (involving appellants' requested special issues which were refused by the trial court), and their point nine (involving the contention that the Sinton Building and Loan Association was a necessary party to the suit), will be for the determination of the lower court, if they arise during the course of the new trial.

The judgment of the trial court is reversed and the cause remanded for new trial.